## Charlottesville

### KENNETH C. CLAY

### v.

### COMMONWEALTH OF VIRGINIA

No. 1725-90-2

Decided February 11, 1992

COUNSEL

Patrick M. Crowling, Jr., for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

MOON, J.—Kenneth C. Clay was convicted by a Chesterfield County Circuit Court jury of rape, forcible sodomy, abduction and robbery. He appeals the robbery conviction on the grounds that when he used the victim's credit card in her presence to obtain funds from an electronic bank teller machine, he was not robbing her but was taking money from the bank. We do not agree because the money was taken from her while it was in her constructive possession. Clay also appeals the rape conviction on the ground that the court improperly instructed the jury on previous consensual sexual relations with the victim when there was no evidence to support giving the instruction. Because, from one view of the evidence, there was evidence of prior consensual sexual intercourse, we hold that the giving of that instruction was not reversible error. Thus, we affirm the convictions.

On August 16, 1989, Clay approached the victim in a parking lot outside Cloverleaf Mall in Chesterfield County. As she entered her car, Clay, indicating that an object in his hand was a gun, threatened to "blow [her] away" if she did not move over so he could drive. He drove to a spot where he forced her to disrobe and perform oral sodomy on him. He attempted intercourse and anal sodomy with her. She said that he penetrated her but not for long because his penis was only partially erect. According to Clay, they "made love."

Clay then asked the victim for money and she said she had none but could get some from a money machine. At the machine, as she left the car to get the money, he said that he had a silencer on his gun and if she ran, he would shoot her. She attempted to get $100 from the machine but was unable to do so. Clay then drove

to another money machine and this time, in her presence using her bank card, he was able to get fifty dollars. The victim testified that she permitted him to get the money because she thought he would "physically hurt" her.

## I.

The appellant argues that the evidence proved that he only took a bank card from the victim. He asserts that as a matter of law he took actual possession of the money from a bank machine and not from the victim, who he argues did not have actual or constructive possession of the money.

To establish the crime of robbery, personal property of another must be taken, with the intent to steal, from the person or in the person's presence, against the person's will by violence or by putting the person in fear. When one takes cash from the presence of a person whose right to possession is superior to that of the thief, the robbery is complete. *Hairston v. Commonwealth*, 2 Va. App. 211, 214-17, 343 S.E.2d 355, 357-59 (1986).

Where one has custody of property rightfully belonging to another, the conversion into possession of the property by force, threat or intimidation constitutes robbery. *See Pritchard v. Commonwealth*, 225 Va. 559, 563, 303 S.E.2d 911, 913 (1983). In *Pritchard*, the Court upheld a robbery conviction of an accused who, after having his automobile gas tank filled, produced a gun and threatened the attendant in order to leave without paying. *Id.* at 560, 303 S.E.2d at 912. The Court rejected the accused's argument that, since he obtained the gas before presenting the threat of force, he was guilty of not more than petit larceny. *Id.* at 561, 303 S.E.2d at 912. The Court held that, although a robber may obtain possession of the victim's property without having completed a robbery, the robbery is complete when the property in the robber's custody is taken away. *Id.* at 562, 303 S.E.2d at 913.

Here, the victim had constructive possession of the money and the bank had "bare custody" of the money before it appeared in the dispensing slot of the money machine in the presence of both Clay and the victim. *See id.* When, by the continued use of intimidation and threat, Clay took possession of the money, the robbery was complete. *See id.* at 563, 303 S.E.2d at 913; *United States v. Roberts*, 898 F.2d 1465 (10th Cir. 1990) (upholding a robbery

conviction where the defendant had accosted the victim at a bank machine and took fifty dollars from her which she had already taken out of the machine and then used her card to withdraw an additional thirty dollars).

## II.

Appellant objected to the Commonwealth's consent instruction[1] upon the stated ground that no evidence of any prior consensual acts of sexual intercourse had been introduced. He argues that the instruction may have caused the jury to believe that, since Clay offered no evidence of prior sexual intercourse, the jury was to find that the victim did not consent.

Evidence of prior consensual acts of intercourse between the victim and defendant was introduced depending upon how one views the evidence. After the sexual assault in Chesterfield and the incident at the money machine, Clay drove the victim to Washington, D.C., where he purchased and ingested cocaine. Afterwards, he again sodomized and raped the victim. He testified these were consensual acts. He then drove her into Prince George County, Maryland, and again raped and sodomized her. Again, he testified these acts were consensual. The final intercourse occurred in Chesterfield County, Virginia, in the early hours of August 17. Thus, there were two sexual acts in Chesterfield County, Virginia, one in the evening of August 16 and the other in the early morning of August 17. Under the indictment charging rape "on or about August 16, 1989," the jury could have found him guilty of either. *See Clinebell v. Commonwealth*, 3 Va. App. 362, 364-67, 349 S.E.2d 676, 677-79 (1986), *rev'd on other grounds*, 235 Va. 319, 368 S.E.2d 263 (1988). Thus, according to Clay's testimony, there were two or three separate acts of intercourse which Clay had described as consensual. Thus, there was evidence to support the granting of the instruction.

The instruction is a proper statement of the law. It is the instruction customarily given at the request of a defendant who claims that the intercourse was consensual as were other consensual sexual acts. If the appellant had requested the instruction as

---

[1] The instruction stated: "The defendant has offered as his defense in this case that [the victim] consented to have sexual intercourse with him. In deciding whether or not she consented, you may consider evidence of any previous acts of such sexual intercourse with the defendant."

a defense to the final alleged criminal act of intercourse, he would have been entitled to it based upon his testimony of other consensual acts of intercourse during the evening in Virginia, Washington and again in Prince George County, Maryland.

Since appellant's objection at trial was not to the Commonwealth offering the instruction, but only to the claim that there was no evidence to support granting it, we do not reach the question whether the instruction should have been given at the request of the Commonwealth. We only consider on appeal those questions raised in the trial court. Rule 5A:18.

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Barrow, J., and Coleman, J., concurred.