COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and Humphreys
Argued at Alexandria, Virginia


SAMUEL GONZALES ORTIZ
                                        MEMORANDUM OPINION* BY
v.    Record No. 2834-00-4      CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          JANUARY 22, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                    Alfred D. Swersky, Judge

            Uley Norris (Mary E. Maguire, Senior
            Assistant Public Defender, on brief), for
            appellant.

            Michael T. Judge, Assistant Attorney General
            (Randolph A. Beales, Acting Attorney
            General, on brief), for appellee.


     Samuel Gonzales Ortiz (appellant) was convicted in a bench

trial of robbery in violation of Code § 18.2-58.  On appeal, he

contends that the trial court erred in finding the evidence

sufficient to convict him of robbery because (1) the

Commonwealth failed to prove criminal intent and (2) the

evidence supported only a finding of larceny from the person.

For the following reasons, we affirm the judgment of the trial

court.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I. BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that on June 10, 2000, Yessenia Henriquez (Henriquez) left a check cashing business on West Glebe Road in Alexandria, Virginia. As she walked down the road she saw appellant standing across the street near a taxicab. She asked appellant if the cab "belonged to him." Appellant responded that it belonged to another man who was in front of the cab. Henriquez walked away, and appellant called out to her, "Come here." Henriquez walked to Executive Avenue, and appellant grabbed her from behind. He grabbed her right arm, pulled her towards him and said again, "Come here," and "Let's go." Henriquez fought to "get him off [her]" and after they pushed each other, appellant pulled her 14-carat gold necklace from her neck. When the necklace broke, a baby ring flew off of it. After taking the necklace, appellant walked away.

Henriquez called the police on her cellular phone, and three to five minutes later Officer Buckley (Buckley) arrived on the scene. Henriquez told Buckley what had occurred and gave him a description of the person who took her necklace.

- 2 -

Henriquez's arm was bruised and she also had a red mark on the back of her neck which was, "thin, about the width of the gold necklace, and it ran from one side to the other side." They drove around the neighborhood and after approximately five to ten minutes they saw appellant. Henriquez identified him as the person who took her necklace. Buckley arrested him and found the victim's necklace in his blue jeans pocket. Buckley then called another officer who retrieved the baby's ring which had fallen off the necklace.

Officer Angel Simedly (Simedly) of the Alexandria Police Department transported appellant to police headquarters. When appellant got into the police car, he told Simedly that:

> he met her by the Rite-Aid. He saw her. He told me that she apparently needed a ride. He offered $50 in exchange for sex. Then they walked to Executive Avenue. He was expecting sex. He didn't get any. He says that she began to talk to a male outside the building on Executive Avenue, and when he asked her what's up, she told him to go away, and that's when he grabbed for her necklace.

Appellant said that he took the necklace because she refused to give him the $50 back he gave her for sex. Simedly also noted that one of appellant's fingers was bleeding. Appellant said that it had occurred when he grabbed the necklace from Henriquez.

At trial, appellant gave a different version of the events. He testified that he had cut his finger at work rather than when

he took the necklace from the victim. He also testified that on June 9, 2000 he was at "a place called El Tropico" and danced with a girl who needed and wanted $50. Appellant gave her $50, and they agreed to meet the next day at the place where Henriquez encountered appellant. When Henriquez approached, he mistook her for the girl he met at the El Tropico. Appellant thought Henriquez was "going to play with me" as she walked away. He followed her and grabbed her arm, intending to recoup his $50. He asked what happened to his money and then grabbed her necklace as a form of repayment.

The trial court found appellant guilty of robbery, stating that even if it accepted appellant's account of what happened, the necessary elements for robbery are in place: "a taking by force that's independent of the force necessary to take the object from the victim's neck." The court noted that, "the application of force to stop her, the grabbing of her purse and then the struggle that ensued afterwards, whether he harbored some secret intent to try to get back money that he mistakenly believed she owed him, if you view it from the standpoint of the victim, that's force." The judge further stated that there was additional force applied to remove the necklace and that this situation is distinguishable from the grabbing of a purse where the person, "is not even aware of the presence until there's force applied to take the object."

## II.  STANDARD OF REVIEW

In reviewing the sufficiency of the evidence, "the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict."  Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42, cert. denied, 502 U.S. 944 (1991).

"[T]he trial court's judgment will not be set aside unless plainly wrong or without evidence to support it."  Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999).

> The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.  See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).

Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

## III.  CRIMINAL INTENT

Appellant first argues that the Commonwealth failed to prove that he had the requisite intent to rob the victim because he had a good faith belief that the necklace belonged to him under a bona fide claim of right.  He contends that because he mistook Henriquez for the woman whom he had paid $50 for sex, he took the necklace as substitute for the money he felt he was

- 5 -

owed. If viewed as a <u>bona fide</u> attempt to enforce payment of a debt, the <u>mens rea</u> for robbery is lacking. This argument is without merit.

Robbery is the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." <u>Graves v. Commonwealth</u>, 21 Va. App. 161, 164, 462 S.E.2d 902, 903 (1995). "With respect to the crimes of robbery and larceny, a <u>bona fide</u> claim of right could be a defense because it negates the criminal intent necessary to sustain those offenses, that is, the intent to steal." <u>Strohecker v. Commonwealth</u>, 23 Va. App. 242, 257, 475 S.E.2d 844, 852 (1996). "[A] bona fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to [possess] the property. <u>O'Banion v. Commonwealth</u>, 33 Va. App. 47, 56, 531 S.E.2d 599, 603 (2000). "But if the claim of right is a mere pretext covering the intent to steal, the taking by violence is robbery." <u>Pierce v. Commonwealth</u>, 205 Va. 528, 533, 138 S.E.2d 28, 32 (1964). "[A] claim of right is an affirmative defense and thus usually a question for the trier-of-fact." <u>Reed v. Commonwealth</u>, 6 Va. App. 65, 70, 366 S.E.2d 274, 277 (1988).

The trial court found appellant guilty of robbery, implicitly rejecting his "claim of right defense." Appellant failed to carry his burden of proof on this affirmative defense.

We find the facts of this case analogous to those of Pierce in which there was a conflict about the bona fide nature of the claim of right defense. Defendants Pierce and Hoffler were tried together and convicted of robbery for taking the key to a truck by force. The defendants argued that they had no intent to steal because they took the key under a bona fide claim of right because the truck's owner sold the truck to Pierce but refused to deliver it or refund the purchase money. However, the owner testified that he had neither sold the truck nor had Pierce paid him any money. At gunpoint, the defendants forced the owner to give up the keys to the truck.

The Supreme Court noted "[w]here the evidence is conflicting the question of bona fides is for the trier of the facts, in this case the court." Pierce, 205 Va. at 534, 138 S.E.2d at 32. Further, "[t]he opportunity of the trial court to see and hear these witnesses was helpful beyond the ordinary in ascertaining the truth." Id.

In the instant case, the trial court was entitled to consider the conflicts in appellant's own testimony as well as the testimony of the victim. The trial court was free to disbelieve the self-serving statements of appellant and conclude that he was lying to conceal his guilt.

The evidence, viewed in the light most favorable to the Commonwealth, refutes the claim of right defense. Although appellant offered a theory explaining why he took the necklace,

the trial court was not required to accept his account. Henriquez's version of the encounter gave no indication that at the time appellant took the necklace, he thought Henriquez owed him any money or sexual services or was taking the necklace in an attempt to enforce a claim of right.[1]  Further, the fact finder was not required to accept appellant's inconsistent testimony and could conclude from it that he made up the story concerning money for sex and, thus, had no good faith belief that he was entitled to the necklace.  A claim of right is not a defense when it is a pretext covering the intent to steal.  See Pierce, 205 Va. at 533, 138 S.E.2d at 32.  Thus, we cannot say the trial court erred in rejecting appellant's claim of right defense.

### IV.  EVIDENCE SUFFICIENT TO PROVE ROBBERY

Appellant next contends that the violence used in taking the necklace was insufficient to support a conviction for robbery and thus he could only be convicted of larceny from the person.  Appellant separates his contact with the victim into two separate encounters:  the approach and the taking. Appellant argues that his initial grab of the victim's arm was distinct from his taking of the necklace and that the only force

---

[1] Because it was not raised by either party, we do not address whether enforcing an illegal contract could ever be the basis for a claim of right defense.

he used against Henriquez was that necessary to take the necklace. This argument too is without merit.

Larceny is the "taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intent to deprive the owner thereof permanently." Graves v. Commonwealth, 21 Va. App. 161, 164, 462 S.E.2d 902, 903 (1995).

"The touching or violation necessary to prove [robbery] may be indirect, but cannot result merely from the force associated with the taking." Bivins v. Commonwealth, 19 Va. App. 750, 752, 454 S.E.2d 741, 742 (1995). The "[v]iolence or force requires a physical touching or violation of the victim's person." Id.

There is no basis to bifurcate appellant's contact with the victim. He grabbed and pushed her and ripped the necklace from her neck during the same encounter. The force used left bruises on the victim's arm and a red mark on her neck.

The trial court specifically found that, "[w]e have a taking by force that's independent of the force necessary to take the object from the victim's neck." See Jones v. Commonwealth, 26 Va. App. 736, 496 S.E.2d 668 (1998) (the evidence was sufficient to prove a robbery rather than a larceny from the person where the victim was jerked around by her shoulder and the defendant grabbed the purse she was clutching). Credible evidence supports this finding.

For these reasons, we affirm the trial court.

Affirmed.

- 9 -